1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAVIER ALVAREZ,                    )    Case No. CV 08-4429 JC
                                   )
                Plaintiff,         )
                                   )    MEMORANDUM OPINION
        v.                         )
                                   )
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security,                          )
                                   )
                Defendant.         )
_____   )

I.    **SUMMARY**

        On July 10, 2008, plaintiff Javier Alvarez ("plaintiff") filed a Complaint

seeking review of the Commissioner of Social Security's denial of plaintiff's

applications for benefits.  The parties have filed a consent to proceed before a

United States Magistrate Judge.

        This matter is before the Court on the parties' cross motions for summary

judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

Court has taken both motions under submission without oral argument.  See Fed.

R. Civ. P. 78; L.R. 7-15; July 14, 2008 Case Management Order ¶ 5.

///

1

1  Based on the record as a whole and the applicable law, the decision of the

2  Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3  ("ALJ") are supported by substantial evidence and are free from material error.[1]

4  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5  **DECISION**

6  On September 12, 2003, plaintiff filed an application for Disability

7  Insurance Benefits.  (Administrative Record ("AR") 60-62).  On July 22, 2004,

8  plaintiff filed an application for Supplemental Security Income benefits.  (AR 13).

9  Plaintiff asserted that he became disabled on February 20, 2003, due to a stress

10  related mini stroke, headaches, and pain in his upper and lower back, shoulders,

11  and knees.  (AR 60, 91).  The ALJ examined the medical record and heard

12  testimony from plaintiff and a vocational expert on April 11, 2007.  (AR 348-83).

13  On May 23, 2007, the ALJ determined that plaintiff was not disabled

14  through the date of the decision.  (AR 14-19).  Specifically, the ALJ found:

15  (1) plaintiff suffered from the following severe impairments:  Arthritis of the

16  shoulders and knees and degenerative disc disease of the spine (AR 17);

17  (2) plaintiff's impairments, considered singly or in combination, did not meet or

18  medically equal one of the listed impairments (AR 14, 17); (3) plaintiff could

19  perform a significant range of light work[2] (AR 16, 17-18); (4) plaintiff could not

20  perform his past relevant work (AR 14, 18); (5) plaintiff could perform jobs that

21

22  [1]The harmless error rule applies to the review of administrative decisions regarding

23  disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
(9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social

24  Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of

25  application of harmless error standard in social security cases).

26  [2]The ALJ determined that plaintiff: (i) could lift and/or carry up to 20 pounds
occasionally and up to 10 pounds frequently; (ii) could stand/walk up to six hours per day;

27  (iii) could sit up to six hours per day; (iv) should perform no at or above shoulder level work;
(v) should not perform forceful pushing/pulling; (vi) should not run, jump, crawl; and

28  (vii) should not perform repetitive or prolonged kneeling/squatting/stair climbing.  (AR 15, 17-
18).

1   exist in significant numbers in the national economy (AR 14, 18); and

2   (6) plaintiff's allegations regarding his limitations were not totally credible (AR

3   15, 17).

4          On May 28, 2008, the Appeals Council denied plaintiff's application for

5   review.  (AR 5-7).

6   **III.   APPLICABLE LEGAL STANDARDS**

7          **A.    Sequential Evaluation Process**

8          To qualify for disability benefits, a claimant must show that he is unable to

9   engage in any substantial gainful activity by reason of a medically determinable

10  physical or mental impairment which can be expected to result in death or which

11  has lasted or can be expected to last for a continuous period of at least twelve

12  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

13  § 423(d)(1)(A)).  The impairment must render the claimant incapable of

14  performing the work he previously performed and incapable of performing any

15  other substantial gainful employment that exists in the national economy.  Tackett

16  v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

17         In assessing whether a claimant is disabled, an ALJ is to follow a five-step

18  sequential evaluation process:

19         (1)    Is the claimant presently engaged in substantial gainful activity?  If

20                so, the claimant is not disabled.  If not, proceed to step two.

21         (2)    Is the claimant's alleged impairment sufficiently severe to limit

22                his ability to work?  If not, the claimant is not disabled.  If so,

23                proceed to step three.

24         (3)    Does the claimant's impairment, or combination of

25                impairments, meet or equal an impairment listed in 20 C.F.R.

26                Part 404, Subpart P, Appendix 1?  If so, the claimant is

27                disabled.  If not, proceed to step four.

28  ///

3

1     (4)    Does the claimant possess the residual functional capacity to

2               perform his past relevant work?[3]  If so, the claimant is not

3               disabled.  If not, proceed to step five.

4     (5)    Does the claimant's residual functional capacity, when

5               considered with the claimant's age, education, and work

6               experience, allow him to adjust to other work that exists in

7               significant numbers in the national economy?  If so, the

8               claimant is not disabled.  If not, the claimant is disabled.

9 Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th

10 Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

11     The claimant has the burden of proof at steps one through four, and the

12 Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262

13 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679

14 (claimant carries initial burden of proving disability).

15     **B.**    **Standard of Review**

16     Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

17 benefits only if it is not supported by substantial evidence or if it is based on legal

18 error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

19 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

20 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

21 mind might accept as adequate to support a conclusion."  Richardson v. Perales,

22 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

23 mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

24 Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

25

26 _____

27      [3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a),

28 416.945(a).

4

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

**IV.    DISCUSSION**

> **A.    The ALJ Properly Evaluated the Medical Evidence**
>
> > **1.    Pertinent Facts**
> >
> > > **a.    Medical Opinion Evidence**

On September 4, 2003, Dr. Andrew Hesseltine, a treating physician, noted that plaintiff experienced tenderness in the cervical and lumbar soft tissue, and decreased range of motion in the cervical and lumbar spine. (AR 190-91).  Dr. Hesseltine expressly referred to MRI studies of the back and neck, a nerve conduction test and electrodiagnostic studies.  (AR 187, 191).  Dr. Hesseltine recommended no functional limitations.  (AR 14, 185-92).

On August 15, 2004, Dr. Michael Luciano, a consultative examining orthopedist, conducted a complex orthopedic evaluation of plaintiff in connection with plaintiff's worker's compensation claim.  (AR 307-41).  Dr. Luciano examined plaintiff and plaintiff's medical records, and provided a detailed summary of the records, including multiple MRI studies conducted on June 13, 2003, July 11, 2003, and March 23, 2004, and an electrodiagnostic study conducted on December 19, 2003.  (AR 307-41).  Dr. Luciano noted that plaintiff displayed tenderness to palpation in both shoulders, both knees, and in the cervical and lumbar soft tissue, and had decreased range of motion in his shoulders, cervical spine and lumber spine, and slightly decreased range of motion in flexion, bilateral knees.  (AR 335, 337).  Dr. Luciano opined that, on a prophylactic basis,

1    plaintiff should be precluded from:  "at or above shoulder level work and forceful

2    pushing/pulling, . . . running, jumping, crawling, and repetitive or prolonged

3    kneeling/squatting/stair climbing, . . . very prolonged upward/downward/sideways

4    gazing utilizing the neck, . . . [and] very heavy lifting and repetitive

5    bending/stooping." (AR 335-36).

6          On October 14, 2004, Dr. Laurence Meltzer, a state consultative examining

7    orthopedist conducted a complete orthopedic evaluation of plaintiff.  (AR 197-

8    201).  (AR 197).  Dr. Meltzer examined plaintiff and reviewed the objective

9    medical evidence, expressly referencing another doctor's summaries of multiple

10   cervical and lumbar spine MRIs.  (AR 197-201).  Dr. Meltzer found that plaintiff

11   had minimal objective signs of pathology.  Dr. Meltzer noted that plaintiff had

12   decreased range of motion in the cervical spine, minimal decreased range of

13   motion of the lumbar spine due to mild degenerative cervical disc disease of the

14   cervical and lumbar spine, and normal range of motion for upper and lower

15   extremities.  (AR 198-201).  Dr. Meltzer opined that plaintiff had "no functional

16   restrictions" in his upper extremities, but was otherwise limited as follows:  (1) he

17   could lift and carry 50 pounds occasionally and 25 pounds routinely; (2) he could

18   sit, stand and walk for a total of 8 hours in an 8-hour workday with breaks every 2-

19   3 hours; (3) he should not walk on uneven or irregular terrain; (4) he could

20   frequently climb stairs but not ladders; and (5) he could occasionally stoop, kneel

21   and crouch.  AR 201).

22                      **b.    The ALJ's Decision**

23          In his May 23, 2007, decision, the ALJ summarized the medical opinions

24   and evaluations regarding plaintiff's physical impairments provided by Dr.

25   Hesseltine, Dr. Luciano, and Dr. Meltzer, and considered "all  . . . evidence of

26   record," which also included statements submitted by plaintiff and his wife, and

27   testimony of plaintiff and the vocational expert at the administrative hearing.  (AR

28   14-21).  The ALJ referred to plaintiff's complaints of multiple joint pains and

noted that "[o]bjective medical cause for [plaintiff's] pain [was] established by" multiple MRIs, which the ALJ summarized.

As noted above, the ALJ determined that plaintiff had the residual functional capacity to perform a significant range of light work, *i.e.*, that plaintiff: (i) could lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; (ii) could stand/walk up to six hours per day; (iii) could sit up to six hours per day; (iv) should perform no at or above shoulder level work; (v) should not perform forceful pushing/pulling; (vii) should not run, jump, crawl; and (viii) should not perform repetitive or prolonged kneeling/squatting/stair climbing. (AR 15, 17-18). The ALJ stated that his residual functional capacity determination was based on "the most restrictive elements of [plaintiff's] examining and treating doctors' residual functional capacity opinions." (AR 15).

## 2.    Analysis

Plaintiff contends that the ALJ failed adequately to evaluate the medical evidence, and that, consequently, the ALJ's decision was not supported by substantial evidence. (Plaintiff's Motion at 5-6). Specifically, plaintiff alleges that the ALJ (1) inadequately addressed and/or misstated the results of MRI studies (Plaintiff's Motion at 2, 3-5); (2) inadequately discussed the opinions of Dr. Hesseltine (a treating physician who generated a report dated September 4, 2003 [AR 185-92]) and Dr. Luciano (a medical examiner who generated a report dated August 15, 2004 [AR 307-41]) (Plaintiff's Motion at 2); (3) made a residual functional capacity assessment that, contrary to the ALJ's suggestion, was not as restrictive as that called for by Dr. Meltzer (a state agency consultative examiner [AR 197-201]) (Plaintiff's Motion at 3); and (4) ignored the December 19, 2003 electrodiagnostic examination report from Dr. Leonard Scott (Plaintiff's Motion at 5). This Court concludes that the ALJ did not materially err in evaluating the record medical evidence.

///

7

1    First, this Court rejects plaintiff's contentions that the ALJ's evaluation of

2   the MRI studies warrants a reversal or remand.  Plaintiff essentially complains that

3   the ALJ's evaluation of the MRIs was erroneous because the ALJ's summary of

4   such reports did not cite to the record and misstated the results of the MRIs of

5   plaintiff's cervical and lumbar spines.  (Plaintiff's Motion at 2-6).  To the extent

6   plaintiff complains about the ALJ's failure to cite to the record when discussing

7   the MRIs, such omission is immaterial.  To the extent plaintiff complains that the

8   ALJ's summary of the MRIs was incomplete and misstated the findings therein,

9   the Court likewise finds no material error, particularly when the ALJ's summary is

10  viewed in context.  As noted above, the ALJ summarized the MRIs for the purpose

11  of making it clear that there was objective medical evidence of the cause of the

12  pain about which plaintiff complained – a threshold determination necessary to an

13  analysis of plaintiff's credibility, as discussed further below.  (AR 14).  It was

14  unnecessary for the ALJ to recite and discuss every detail regarding the MRIs,

15  particularly where, as here, the medical opinions to which the ALJ did specifically

16  refer and upon which he relied – those of Drs. Hesseltine, Luciano and Metzger –

17  did consider the MRIs in issue.  As noted above, all three such doctors expressly

18  referred to the MRIs, and Dr. Luciano, in particular, detailed the results of each of

19  the MRIs referenced by plaintiff.  (AR 187, 191, 197, 314, 315, 320-21).  Plaintiff

20  does not dispute that the three medical opinions that form the basis of the ALJ's

21  residual functional capacity assessment are supported by substantial medical

22  evidence.  Simply because the ALJ did not himself discuss every MRI report and

23  may not have accurately summarized them in the context of determining that there

24  was objective evidence to support plaintiff's assertion that he suffered from pain,

25  does not mean he failed to consider such evidence.  See Black v. Apfel, 143 F.3d

26  383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not

27  indicate that such evidence was not considered[.]").  The ALJ was not required to

28  discuss every piece of evidence in the record.  See Howard ex rel. Wolff v.

1  <u>Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).  In light of the
2  medical doctors' expertise, it was wholly appropriate for the ALJ to rely on their
3  assessments of the MRIs and the functional impact of such studies, as opposed to
4  adopting plaintiff's currently asserted lay assessment of such reports.  <u>See</u>
5  <u>Gonzalez Perez v. Secretary of Health & Human Services</u>, 812 F.2d 747, 749 (1st
6  Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings and
7  opinion of a physician"); <u>Ferguson v. Schweiker</u>, 765 F.2d 31, 37 (3d Cir. 1985)
8  (ALJ may not substitute his interpretation of laboratory reports for that of a
9  physician); <u>Winters v. Barnhart</u>, 2003 WL 22384784, at *6 (N.D. Cal. Oct.15,
10 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of
11 a medical expert.").

12      Second, this Court rejects plaintiff's contention that the brevity of the ALJ's
13 reference to the opinions of Drs. Hesseltine and Luciano warrants a reversal or
14 remand.  The ALJ was not required to discuss at length medical opinion evidence
15 which he did not reject, and which was cumulative.  <u>See</u> <u>Howard</u>, 341 F.3d at
16 1012.  Even assuming the ALJ erred in not more extensively discussing such
17 doctors' opinions, such error was harmless as the ALJ's residual functional
18 capacity assessment was at least as restrictive as recommended by such doctors.
19 In any event, nether such doctor opined that plaintiff could not work for any
20 twelve-month period.  <u>See</u> <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993)
21 (in upholding the Commissioner's decision, the Court emphasized:  "None of the
22 doctors who examined [claimant] expressed the opinion that he was totally
23 disabled"); <u>accord</u> <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1130 n.1 (9th Cir. 1990)
24 (upholding Commissioner and noting that after surgery, no doctor suggested
25 claimant was disabled).

26      Third, the Court likewise finds harmless any error by the ALJ in suggesting
27 that he had adopted the "most restrictive elements" of the medical opinion
28 evidence when determining plaintiff's residual functional capacity, even though

1    Dr. Meltzer said plaintiff should only "occasionally stoop, kneel and crouch" (AR

2    201), and the ALJ's residual functional capacity determination precluded only

3    "repetitive or prolonged kneeling [or] squatting" (AR 15). (Plaintiff's Motion at

4    3). As defendant accurately points out, each of the jobs the vocational expert

5    testified plaintiff could perform were at a light exertional level and required no

6    more than occasional stooping, kneeling and crouching. (Defendant's Motion at

7    6) (citing Dictionary of Occupational Titles ("DOT") §§ 706.687-010 [bench

8    assembler], 727.687-062 [inspector], 920.687-098 [handkerchief folder]).[4]

9         Finally, the ALJ was not required to explain his decision to exclude any

10   findings contained in the electrodiagnostic examination report prepared by Dr.

11   Leonard Scott. An ALJ must provide an explanation only when he rejects

12   "significant probative evidence." See Vincent v. Heckler, 739 F.2d 1393, 1394-95

13   (9th Cir. 1984) (citation omitted). Here, Dr. Scott found that plaintiff had marked

14   sensory radiculopathy of the right sided (L5) peroneal nerve and left (S1) sided

15   sural nerve. Plaintiff fails to demonstrate that such finding constitutes significant

16   or probative evidence that is not already accounted for in the ALJ's residual

17   functional capacity assessment. Moreover, at least Dr. Luciano expressly

18   considered Dr. Scott's December 19, 2003 report in connection with reaching his

19   opinions. (AR 307, 319). The ALJ considered Dr. Luciano's report when

20   determining plaintiff's residual functional capacity, and thus ultimately did not fail

21   to account for Dr. Scott's report. (AR 14-15).

22        In light of the foregoing, a remand or reversal on this basis is not warranted.

23   ///

24   ///

25   ///

26   _____

27        [4]According to the DOT, the job of bench assembler calls for occasional stooping and
     crouching, but kneeling is not present, whereas neither stooping, kneeling, nor crouching are

28   present in connection with the jobs of inspector and handkerchief folder. DOT §§ 706.687-010,
     727.687-062, 920.687-098.

1       **B.     The ALJ Properly Evaluated Plaintiff's Credibility**

2               **1.     Additional Pertinent Facts**

3               In an Exertional Daily Activities Questionnaire dated October 13, 2003,

4       plaintiff stated the following:  He suffers from a lot of pain in his upper back, his

5       lower back, his shoulders and his knees.  He has headaches.  He feels fatigued

6       very easily.  He doesn't walk, and when he does go to the store with his wife, he

7       gets very tired.  His wife cleans the home.  He is only able to drive his car for 30

8       minutes a day.  He requires rest periods during the day due to fatigue and strong

9       headaches.  (AR 136-38).

10              In a disability report received by the Social Security Administration on

11      November 12, 2004, plaintiff stated that he has numbness and tingling in his arms,

12      and is increasingly more uncomfortable while sitting, especially while driving.

13      (AR 149).

14              In a disability report dated January 25, 2005, plaintiff stated:   The pain in

15      his back is so severe that he cannot bend over.  His wife must help him dress every

16      day.  He is unable to help his wife much anymore with cooking or cleaning.  He is

17      unable to do lawn work for more than five minutes at a time.  Bending over or

18      leaning over slightly and holding weight causes extreme pain.  (AR 146, 153).

19              At the April 11, 2007 hearing, plaintiff testified:  He experiences pain in his

20      neck, back and knees.  (AR 367, 371).  He continued to take Ibuprofen and

21      Vicodin which helped a little with his pain, but caused plaintiff to feel drunk.  (AR

22      368).  He needs to rest every day, sometimes for several hours.  (AR 371-72).

23              In the ALJ's May 23, 2007 decision, the ALJ noted that plaintiff's

24      symptoms included pain in his shoulders, knees and back.  (AR 14).  The ALJ

25      found that plaintiff's medically determinable impairments could reasonably be

26      expected to produce his symptoms, but determined that plaintiff's subjective

27      complaints were not "sufficiently credible to justify any further limitations than

28      ///

1    those established by the objective medical record." (AR 15).  The ALJ stated two
2    reasons for discrediting plaintiff's subjective complaints.

3        First, the ALJ noted that plaintiff's "allegations of total disability [were]
4    inconsistent with his activities" as reflected in a Third Party Function Report
5    submitted by plaintiff's wife.  (AR 15).  Specifically, the ALJ stated:

6        The [plaintiff's] wife, Rosa Alvarez, states that [plaintiff] goes to
7        church daily, visits his father at the hospital daily, reads the Bible
8        daily, plays guitar daily, and does some household chores daily
9        [citation].  He also does light yard work, talks on the phone, and hosts
10       visitors.  He can lift objects that weigh up to ten pounds without any
11       problems, and can stand and walk for about ten minutes.  He has good
12       social skills [citation].

13   (AR 15) (citing Exhibit 6E [AR 120-28]).  The ALJ noted that plaintiff's wife's
14   statements were mostly credible, but that her estimate of the weight plaintiff could
15   safely lift was not supported by any professional medical opinion.  (AR 15).

16       Second, the ALJ pointed out that plaintiff's subjective complaints were "not
17   consistent with the treatment he [was receiving]."  (AR 15).  Specifically, the ALJ
18   noted that even though plaintiff alleged that he was in a disabling level of pain,
19   "he treated his pain with physical therapy and one and a half years of chiropractic.
20   He also takes ibuprofen and Tylenol [citation]."  (AR 15 (citing AR 197)).  The
21   ALJ concluded that "[i]t [was] reasonable to assume that if [plaintiff] were as
22   pained as he claimed, he would have told his doctor, and the doctor would have
23   ordered more aggressive treatment."  (AR 15).

24                          **2.    Pertinent Law**

25       An ALJ is not required to believe every allegation of disabling pain or other
26   non-exertional impairment.  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007)
27   (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  If the record establishes
28   the existence of a medically determinable impairment that could reasonably give

                                        12

1  rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as
2  to the credibility of the claimant's statements about the symptoms and their
3  functional effect.  Robbins, 466 F.3d 880 at 883 (citations omitted).  Where the
4  record includes objective medical evidence that the claimant suffers from an
5  impairment that could reasonably produce the symptoms of which the claimant
6  complains, an adverse credibility finding must be based on clear and convincing
7  reasons.  Carmickle v. Commissioner, Social Security Administration, 533 F.3d
8  1155, 1160 (9th Cir. 2008) (citations omitted).  The only time this standard does
9  not apply is when there is affirmative evidence of malingering.  Id.  The ALJ's
10 credibility findings "must be sufficiently specific to allow a reviewing court to
11 conclude the ALJ rejected the claimant's testimony on permissible grounds and
12 did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367
13 F.3d 882, 885 (9th Cir. 2004).

14      To find the claimant not credible, an ALJ must rely either on reasons
15 unrelated to the subjective testimony (e.g., reputation for dishonesty), internal
16 contradictions in the testimony, or conflicts between the claimant's testimony and
17 the claimant's conduct (e.g., daily activities, work record, unexplained or
18 inadequately explained failure to seek treatment or to follow prescribed course of
19 treatment).  Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at
20 680-81; SSR 96-7p.  Although an ALJ may not disregard such claimant's
21 testimony solely because it is not substantiated affirmatively by objective medical
22 evidence, the lack of medical evidence is a factor that the ALJ can consider in his
23 credibility assessment.  Burch, 400 F.3d at 681.

24      Questions of credibility and resolutions of conflicts in the testimony are
25 functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th
26 Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable
27 and is supported by substantial evidence, it is not the court's role to
28 "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

1          **3.    Analysis**

2          Plaintiff contends that the ALJ improperly evaluated his credibility.  As

3    noted above, the ALJ stated two reasons for discrediting plaintiff's allegations

4    regarding the severity of his pain.  (AR 15).  The Court concludes that each such

5    reason individually constitutes a clear and convincing reason for rejecting

6    plaintiff's pain testimony, and that each such reason is supported by substantial

7    evidence.  Accordingly, a reversal or remand based upon the ALJ's assessment of

8    plaintiff's credibility is not warranted.

9          First, this Court rejects plaintiff's suggestion that the ALJ's credibility

10   determination failed sufficiently to address plaintiff's subjective statements

11   regarding pain and his asserted inability to perform tasks on a sustained basis.

12   The ALJ expressly acknowledged that plaintiff complained of "disabling . . . pain"

13   and, again, that such pain could reasonably result from plaintiff's medically

14   determinable impairments.  (AR 14).  As noted above, the ALJ was not required to

15   discuss every piece of cumulative evidence regarding plaintiff's pain.  See

16   Howard, 341 F.3d at 1012; Black, 143 F.3d at 386.

17         Second, the ALJ properly discredited plaintiff's allegations of disabling

18   pain as inconsistent with plaintiff's daily activities.  See Thomas v. Barnhart, 278

19   F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony

20   and the claimant's conduct supported rejection of the claimant's credibility);

21   Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between

22   claimant's testimony and actions cited as a clear and convincing reason for

23   rejecting the claimant's testimony).  The ALJ reasonably concluded that a person

24   who was unable to perform even sedentary work would not have been able to

25   sustain the daily schedule maintained by plaintiff, as reflected in his wife's

26   Function Report.  (AR 15, 120-24).  Although plaintiff suggests that the activities

27   identified in plaintiff's wife's Function Report were simply examples of activities

28   that plaintiff performed on a daily basis (Plaintiff's Motion at 8-9), it was

14

1  reasonable for the ALJ to infer otherwise.  The Function Report instructs the

2  person completing the form to state what the claimant "does from the time he []

3  wakes up until going to bed."  (AR 120).  The ALJ reasonably inferred that the

4  wife's response to such question reflected plaintiff's *daily* activities.  Moreover,

5  plaintiff testified at the hearing that during a typical day he would take his

6  daughter to school in the morning, stop at church "every day," and play his guitar

7  "every day."  (AR 375-76).  Plaintiff also stated that he read the Bible "a lot,"

8  watched television, listened to music, helped with household chores and did light

9  yard work.  (AR 375-77).  This Court will not second-guess the ALJ's reasonable

10  interpretation of such evidence, even if such evidence could give rise to inferences

11  more favorable to plaintiff.[5]

12

13  _____

14  [5]Plaintiff also suggests that the ALJ's credibility assessment of plaintiff is flawed because the ALJ did not expressly reference or discredit other statements of plaintiff's wife which

15  corroborate plaintiff.  (Plaintiff's Motion at 8-9).  This Court disagrees.  Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he

16  expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th

17  Cir. 2001).  Here, the ALJ satisfied his obligations in this regard.  To the extent the ALJ erroneously failed to discuss plaintiff's wife's statement that plaintiff spends "all day" with her

18  and that she is "always helping [plaintiff]" (Plaintiff's Motion at 8), any error was harmless as the ALJ expressly noted in his decision that he had considered the lay evidence from plaintiff's

19  wife and because such evidence was cumulative of plaintiff's own statements.  See Zerba v.

20  Commissioner of Social Security Administration, 279 Fed. Appx. 438, 440 (9th Cir. 2008) (failure to address husband's cumulative lay testimony harmless error); Rohrer v. Astrue, 279

21  Fed. Appx. 437, 437 (9th Cir. 2008) (rejecting claimant's contention that ALJ improperly

22  rejected lay witness statement of claimant's girlfriend where such statement cumulative of statements by claimant which ALJ accepted).  (The Court may cite unpublished Ninth Circuit

23  opinions issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R.

24  App. P. 32.1(a)).  To the extent plaintiff alleges that the ALJ erroneously "ignored" the statement that plaintiff is unable to walk more than 10 minutes at a time (Plaintiff's Motion at 9), any such

25  error was also harmless as such statement was cumulative of plaintiff's own statements and as

26  the ALJ noted with respect to the wife's other statements about plaintiff's exertional abilities, that such lay statement was "not supported by any professional medical opinion" in the record,

27  and therefore was reasonably rejected without comment.  See Vincent, 739 F.2d at 1394-95 (ALJ

28  did not err by omitting from hearing decision discussion of "lay testimony that conflicted with
(continued...)

15

1    Third, the ALJ reasonably rejected plaintiff's allegations of disabling pain

2   as inconsistent with the level of treatment he received.  The ALJ noted that

3   plaintiff had treated his pain with physical and therapy and chiropractic and was

4   taking relatively mild pain relievers (Tylenol) and non-prescription medication

5   (Ibuprofen).  (AR 15).  It was reasonable for the ALJ to infer that if plaintiff's pain

6   was incapacitating, he would requested and been prescribed stronger medication

7   and more aggressive treatment.  In assessing credibility, the ALJ may properly rely

8   on plaintiff's unexplained failure to request treatment consistent with the alleged

9   severity of her symptoms.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)

10  (en banc); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); see Tidwell v.

11  Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (lack of treatment and reliance upon

12  nonprescription pain medication "clear and convincing reasons for partially

13  rejecting [claimant's] pain testimony").[6]

14    As the ALJ made specific findings stating clear and convincing reasons

15  supported by substantial evidence for discrediting plaintiff's allegations regarding

16  ///

17  ///

18

19    [5](...continued)

20  the available medical evidence.") (citation omitted).  As the ALJ expressly considered and
    partially rejected plaintiff's wife's statements based upon germane reasons which are supported

21  by the record, the ALJ did not err in evaluating such lay testimony.

22    [6]Although plaintiff, at the April 11, 2007 hearing, testified that he also took Vicodin, a

23  stronger medication, which helped with the pain, but caused him to feel "drunk" and weak (AR
    367-70),  plaintiff's medical records do not reflect that for any period plaintiff was prescribed

24  Vicodin he complained that he suffered from any side effects from the medication, or that the
    medication was ineffective in alleviating plaintiff's pain.  (AR 289, 291-94, 299).  The ALJ

25  could reasonably have concluded that plaintiff's medication sufficiently resolved his pain

26  complaints, and that plaintiff's testimony regarding any medication side effects was not credible.
    This Court may not substitute its own judgment on credibility for that of the ALJ.  Similarly,

27  even though Dr. Hesseltine recommended that plaintiff receive "an injection for relief of pain"
    (AR 138), plaintiff points to no evidence that he ultimately received such treatment, or if he did,

28  that it was ineffective in alleviating his pain.  (AR 191).

1  the severity of his pain, the ALJ's credibility determination does not warrant a

2  reversal or remand.[7]

3  **V.    CONCLUSION**

4        For the foregoing reasons, the decision of the Commissioner of Social

5  Security is affirmed.

6        LET JUDGMENT BE ENTERED ACCORDINGLY.

7  DATED:   December 28, 2009

8                                          _/s/_____

9                                          Honorable Jacqueline Chooljian
                                           UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

─────────────────

24        [7]Even if one of the bases upon which the ALJ discredited plaintiff's pain testimony was

25  deficient, any such error was harmless because the remaining reason noted by the ALJ is
    supported by substantial evidence and the foregoing error does not negate the validity of the

26  ALJ's ultimate credibility conclusion in this case.  See Carmickle, 533 F.3d at 1162 (Where
    some reasons supporting an ALJ's credibility analysis are found invalid, the error is harmless if

27  (1) the remaining reasons provide substantial evidence to support the ALJ's credibility
    conclusions, and (2) "the error does not negate the validity of the ALJ's ultimate credibility

28  conclusion.") (quoting Batson, 359 F.3d at 1195) (citation and internal quotation marks omitted).